UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARRIE K. LEWIS,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>MICHAEL J. ASTRUE, Commissioner, Social Security Administration,<br><br>　　　　　Defendant. | Case No.: 10-CV-05061-EJD<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

Plaintiff Carrie K. Lewis brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to obtain review of the Social Security Administration's final decision denying her claim for disability benefits. Plaintiff seeks an order reversing the final decision of the Administration and awarding benefits, or alternatively remanding for further administrative proceedings. Presently before the Court are the parties' cross-motions for summary judgment. Having considered the parties' papers and the administrative record, the Court grants Defendant's Motion for Summary Judgment, and denies Plaintiff's Motion for Summary Judgment.

1

Case No.: 10-CV-05061-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## II. BACKGROUND

**A. Procedural History**

On September 7, 2006, Plaintiff filed for Supplemental Security Income Benefits ("SSI") and disability insurance benefits ("DIB") based on several severe impairments, including a seizure disorder, degenerative changes of the right upper extremity and status post right submuscular ulnar nerve transposition, alleging December 20, 1999 as the onset date of disability. Administrative Transcript ("Tr.") at 142-154. Following her claims' initial denial, Plaintiff filed a Request for Reconsideration that on June 22, 2007 was also denied. *Id.* at 91-103.

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 104. On September 25, 2008, the matter was heard before ALJ Brenton Rogozen. *Id.* at 44-67. After this initial hearing, ALJ Rogozen concluded that Plaintiff retained the ability to perform a range of light work,[1] reduced by a 50% loss of use of her non-dominant upper extremity, and an inability to work in especially hazardous settings. *Id.* at 72-82. Relying on the testimony of a vocational expert ("VE"), the ALJ also found that Plaintiff was capable of adjusting to other work existing in the national economy, and was therefore not disabled. *Id.* at 81.

Plaintiff sought review of the ALJ's determination. *Id.* at 114-15. On May 7, 2009, the Appeals Council vacated the ALJ's decision and remanded the case, citing the following issues: (1) inadequate symptom analysis, (2) inadequate evaluation of opinion evidence on mental impairment, (3) the failure to delineate the amount of weight given to the conflicting opinions of various medical professionals and (4) inadequate discussion of third party evidence. *Id.* at 84-87.

On remand, the ALJ affirmed his previous finding that Plaintiff was not disabled under the meaning of the Social Security Act. *Id.* at 11-25. For the second time, Plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 140-41. That request was denied on July 22,

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing ad pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567 (2011).

2

Case No.: 10-CV-05061-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

2010, and the ALJ's decision became the final decision of the Administration. *Id.*

Plaintiff filed the instant action requesting judicial review of the Administration's decision. *See* Dkt. No. 1. On June 13, 2011, Plaintiff moved for summary judgment. *See* Dkt. No. 18. Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant"), filed a cross motion for summary judgment ("Defendant's Motion") on July 12, 2011. *See* Dkt. No. 19.

**B. Plaintiff's Age and Educational, Vocational, and Medical History**

Plaintiff was born on May 13, 1973. Tr. at 155. At the alleged disability onset date, she was 26 years old. *Id.* at 179. Plaintiff graduated from high school and completed three years of college by approximately 1999-2000. *Id.* at 185. She has previously been employed as a bakery clerk, sales associate and telemarketer. *Id.* at 178-87. In 1999, Plaintiff stopped working, and stated that the stoppage was due to her medical conditions. *Id.* at 179.

In May of 2004, Plaintiff had right cubital tunnel surgery on her non-dominant arm. *Id.* at 446-50. Plaintiff alleges that she continues to suffer from numbness in her hands, swelling of her shoulder, and soreness under her shoulder blade. *Id.* at 34; Pl.'s Mot. at 4. She contends that her condition cannot improve because, as her doctor stated, after surgery and physical therapy, there is no further treatment. Tr. at 34; Pl.'s Mot. at 4-5. In addition to her arm condition, Plaintiff has anemia. Tr. at 52, 332-33, 347. She was prescribed iron supplements and had a few blood transfusions. *Id.* at 343-47, 471.

Plaintiff has a seizure disorder for which she takes prescription Lamictal. *Id.* at 52-53, 271-83. On July 12, 2004, when she missed her Lamictal dose in the morning, Plaintiff had a seizure, causing her to fall and break her two lower front teeth. *Id.* at 342-47. This particular incident aside, her seizure condition seems to be well controlled by the prescription medication. *Id.* at 277.

Plaintiff also suffers from alcoholic liver disease. *Id.* at 465-66, 524-26. In July 2009, she was admitted to the hospital for abdominal pain and discharged five days later after successful treatment. *Id.* at 523-25. The record does not show the presence of any persistent functional limitations from the liver disease. *See, e.g.*, *id.* at 524 ("Condition on discharge: stable.").

Lastly, Plaintiff complains of a severe impairment of adjustment disorder. *Id.* at 352. After

3

Case No.: 10-CV-05061-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

undergoing a complete psychiatric evaluation on December 13, 2006, Dr. El-Sokkary noted that the Plaintiff was capable of engaging in daily living activities such as light cooking and cleaning. *Id.* at 351-52. He concluded that Plaintiff could understand, remember, and perform simple tasks. *Id.* On a *Psychiatric Review Technique* form, a state agency consultant documented his findings that Plaintiff could perform simple repetitive tasks on a sustained basis, adapt to work changes, and relate to others. *Id.* at 373-75. The consultant further opined that Plaintiff would experience only mild limitations on her daily living activities, social functioning, concentration, persistence, and pace. *Id.* at 370. Following a psychological examination on September 10, 2009, Plaintiff was diagnosed with adjustment order with depressed mood. *Id.* at 513-19. The psychologist reported that the Plaintiff would be capable of understanding, remembering, and carrying out simple instructions, but that Plaintiff may have moderate difficulty with complex tasks. *Id.*

Plaintiff stated that she would like to return to school. *Id.* at 35-36; Pl.'s Mot. at 5. She has not yet enrolled but is exploring the possibility by seeking out services that can assist her. *Id.*

### III. LEGAL STANDARDS

#### A. Standard for Reviewing the ALJ's Decision

Pursuant to 42 U.S.C. § 405(g), the Court has authority to review an ALJ decision. The Court's jurisdiction, however, is limited to determining whether the denial of benefits is supported by substantial evidence in the administrative record. *Id.* A district court may only reverse the ALJ decision if it is not supported by substantial evidence or if the decision was based on legal error. *Id.*; *accord Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). "Substantial evidence" is more than a scintilla, but less than a preponderance. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The standard requires relevant evidence that a "[r]easonable mind might accept as adequate to support a conclusion." *Vertigan*, 260 F.3d at 1049 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court must uphold the ALJ's conclusion if it is one of several rational interpretations of the evidence. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

4
Case No.: 10-CV-05061-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### B. Standard for Determining Disability

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must also be so severe that a claimant is unable to do her previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," given her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A). "The claimant carries the initial burden of proving a disability." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). If the claimant proves a prima facie case of disability, then the Commissioner has the burden of establishing that she can perform "a significant number of other jobs in the national economy." *Thomas*, 278 F.3d at 955. "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id.*

The ALJ evaluates Social Security disability cases using a five-step evaluation process. 20 C.F.R. §§ 404.1520, 416.920.

1) The ALJ must first determine whether the claimant is presently engaged in substantially gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled; otherwise the evaluation proceeds to step two.

2) The ALJ must determine whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled; otherwise the evaluation proceeds to step three.

3) The ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments, 20 C.F.R. §§ 20 C.F.R. § 404.1520(d), 416.920(d). If so, the claimant is disabled; otherwise the analysis proceeds to step four.

4) The ALJ must determine the claimant's residual functional capacity despite limitations from the claimant's impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant

can still perform work that the individual has done in the past, the claimant is not disabled. If he cannot perform the work, the evaluation proceeds to step five. 20 C.F.R. §§ 404.1520(f), 416.920(f).

5) In this step, the Commissioner has the burden of demonstrating that the claimant is not disabled. Considering a claimant's age, education, and vocational background, the Commissioner must show that the claimant can perform some substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV. DISCUSSION

**A. Evidence Supporting Plaintiff's Failure to Satisfy the Criteria in the Listing of Impairments**

Plaintiff asserts that "substantial evidence does not support [ALJ Rogozen's] actions, findings and conclusions." Pl.'s Mot. at 1. Plaintiff does not challenge the ALJ's determinations at steps one or two of the evaluation process; at issue here are the ALJ's conclusions at steps three, four and five. At step three, Plaintiff disputes the ALJ's determination that she is not disabled; however, there is substantial evidence in the record that Plaintiff did not meet the definition for disability under any listing. In order to qualify for disability insurance benefits, Plaintiff cannot merely prove a diagnosis of seizure disorder, degenerative changes of the right upper extremity, anemia, acute alcoholic liver disease and adjustment disorder. Rather, she "must have . . . medically determinable impairment(s) that satisf[y] all of the criteria in the [Social Security Administration's] listing." 20 C.F.R. § 404.1525(d).

The ALJ is permitted to find a claimant disabled by a seizure disorder from evidence of either nonconvulsive epilepsy or convulsive epilepsy. To establish nonconvulsive epilepsy, a claimant must have a typical seizure pattern occurring more than once weekly with altered awareness or loss of consciousness and manifestations of unconventional behavior or significant loss of activity in the day despite at least three months of prescribed treatment. 20 C.F.R. § 404 part 404, subpart P, App. 1 § 11.03. Convulsive epilepsy requires a typical seizure pattern that

6

Case No.: 10-CV-05061-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

occurs more than once a month in spite of at least three months of prescribed treatment with daytime episodes. 20 C.F.R. § 404 part 404, subpart P, App. 1 § 11.02(A). In the instant case, the record reflects infrequent seizures which are largely controlled when Plaintiff takes prescription Lamictal. Tr. at 277. The one severe instance of a seizure in the record is explained by Plaintiff's failure to take Lamictal. *Id.* at 342-47. Therefore, the evidence regarding the severity and frequency of Plaintiff's seizures does not satisfy the requirements of nonconvulsive or convulsive epilepsy.

Moreover, a claimant suffering from a "major dysfunction of a joint(s) (due to any cause)" can be found disabled. 20 C.F.R. § 404 part 404, subpart P, App. 1 § 1.02(B). The claimant must demonstrate that the dysfunction involves one major peripheral joint in each upper extremity that results in the "inability to perform fine and gross movements effectively . . . ." *Id.* Here, evidence shows that Plaintiff experienced an injury that was later diagnosed as cubital tunnel syndrome. Tr. at 446-50. Plaintiff suffered some pain and symptoms of radiculopathy in the right arm, however, the record does not establish that Plaintiff was incapable of performing fine and gross movements effectively, as required by listing 1.02(B). *Id.* 353-61.

Additionally, the ALJ is able to find a claimant disabled when she demonstrates chronic anemia that requires one or more blood transfusions on an average of at least once every two months. 20 C.F.R. § 404 part 404, subpart P, App. 1 § 7.02(A). The record in the instant case shows that Plaintiff was anemic, but that her condition did not rise to the level described in listing 7.02(A). *Id.* at 343-47, 471. In particular, the evidence establishes that Plaintiff did not require transfusions at the frequency necessitated by the chronic anemia listing. *Id.*

Furthermore, a claimant suffering from chronic liver disease can also be deemed disabled. 20 C.F.R. § 404 part 404, subpart P, App. 1 § 5.05. Here, the record does not reflect a condition sufficiently severe to qualify under listing 5.05. There is only one incidence of ascites in the record. *Id.* at 523. This one event in the record does not satisfy the requirement of recurrence or persistence (§ 5.05(D)) or any of the other requirements under the same listing.

The ALJ is also permitted to find a claimant disabled from a severe impairment of

7

Case No.: 10-CV-05061-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

adjustment disorder. 20 C.F.R. § 404 part 404, subpart P, App. 1 § 12.04. To do so, the record must contain evidence of "medically documented persistence" of symptoms described in the "paragraph A" criteria of this listing, or substantial evidence satisfying the "paragraph B" requirements.

Plaintiff does not provide any evidence of "paragraph A" criteria. Moreover, the record does not contain sufficient evidence demonstrating severe limitations in the four broad functional areas delineated in "paragraph B": (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace and (4) episodes of decompensation. The record indicates that Plaintiff's limitations in activities of daily living are mild. *Id.* at 351-52. She can care for her personal hygiene and perform activities such as light cleaning and cooking without assistance. *Id.* at 190. In addition, the evidence in the record supports the ALJ's finding that Plaintiff is only mildly limited in her social functioning. *Id.* at 362-72. She is able to socialize with her family on a near-daily basis. Furthermore, the evaluations in the record reflect Plaintiff's mild to moderate limitations in the area of concentration, persistence, or pace. *Id.* at 362-72, 375. While Plaintiff has some difficulty understanding, remembering, and carrying out detailed instructions, she is not significantly limited in any other mental capacity. *Id.* at 513-19. Lastly, the record contains no evidence of episodes of decompensation. Thus, substantial evidence supports the ALJ's conclusion that Plaintiff does not suffer from an impairment or combination of impairments that satisfies the requirements of the aforementioned disability listings.

**B. Evidence Supporting Plaintiff's Residual Functional Capacity to Perform Light Work**

Similarly, the ALJ's conclusion at step four that Plaintiff has the residual functional capacity ("RFC") to perform light work is supported by substantial evidence. To make this finding, the ALJ engaged in a two-step process. First, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. *Id.* at 17. Second, the ALJ found that Plaintiff's statements about the intensity, persistence, or functionally limiting effects of pain were not credible and thus concluded, based on a consideration of the entire record, that she had a residual capacity to perform light work. *Id.* at 23.

The ALJ's first conclusion is supported by substantial evidence in the record. After applying to receive DIB and SSI in September 2006, Plaintiff alleged that she could not lift items weighing more than 5-10 pounds. *Id.* at 354. Following the hearing held in December 2009, Plaintiff had surgery for her arm injury and continued to receive treatment. *Id.* 446-50. Plaintiff further alleged that she continued to have numbness and swelling in her pinky and between her shoulder and neck. *Id.* at 34. Evidence of Plaintiff's surgery and cubital tunnel syndrome in the record supports the conclusion that this arm condition could reasonably be expected to cause the aforementioned symptoms.

Additionally, Plaintiff claimed that she experienced unexpected seizures that caused lightheadedness and numb and shaky hands and resulted in the need for blood transfusions. *Id.* at 179. Moreover, Plaintiff asserted that she became lightheaded in the shower and that her medications caused drowsiness and memory loss. *Id.* Evidence that Plaintiff lost her driver's license and was prescribed Lamictal for her seizure condition supports the conclusion that this impairment could reasonably be expected to cause Plaintiff's alleged symptoms. *Id.*

The ALJ's second conclusion that the intensity, persistence, and limiting effects of Plaintiff's symptoms left her with the RFC to perform light work is also supported by substantial evidence in the record. Plaintiff requested that she be found disabled in a closed period from September 12, 2003 through December 12, 2006, the date of examination by Dr. Gable. *Id.* at 330-31. Plaintiff also testified that she was not currently working but could probably perform job duties that allowed her to alternate between sitting and standing and did not require frequent use of her hands. *Id.* at 32-33.

Further examination of the record demonstrates that the medical evidence supports Plaintiff's testimony that she could do light work. Plaintiff underwent submuscular ulnar nerve transposition surgery in May 2004 for her arm and shoulder condition. *Id.* at 446-50. Following the surgery, Plaintiff appeared to be recuperating well, despite some symptoms of tightness and pain. *Id.* at 435-62. The clinical evidence supports Plaintiff's arm limitations, but only in the non-dominant right upper extremity, with a 50% loss of function and slight pain. *Id.* at 284-293. In his

evaluation, Dr. Gable found that Plaintiff could perform light work, lift five pounds frequently and ten pounds occasionally, and sit up to six hours a day with usual breaks. *Id.* at 350. Thus, the record supports the finding that Plaintiff's upper extremity pain is not of a frequency or intensity that would preclude her from sustained work activity. As stated in the *Third Party Function Reports*, Plaintiff is capable of preparing food on a daily basis and doing laundry and light housekeeping at least once or twice a week. *Id.* at 190, 195.

Moreover, substantial evidence supports the finding that Plaintiff's seizure disorder is well controlled and does not rise to the level of severity implied in the *Third Party Function Reports*. As previously mentioned, the only severe incidence of a seizure occurred because Plaintiff forgot to take her medication with her when she was out of town. *Id.* at 342-47. The record establishes that her seizure condition is generally controlled when she takes Lamictal. *Id.* at 277.

In addition, the record supports the conclusion that Plaintiff's liver disease, caused by her excessive consumption of alcohol, is also not severe enough to warrant a finding of disability. Confronted with her liver disease diagnosis, Plaintiff promised to stop drinking and was continued on a restricted diet. *Id.* at 505. After she was discharged from the hospital for the abdominal pain related to her liver condition, she was released with "no restrictions on activities." *Id.* at 524. There is no evidence that this condition presents any persistent functional limitations.

Furthermore, as supported by substantial evidence in the record, Plaintiff's chronic anemia does not limit Plaintiff's capacity to do light work. The record mentions only infrequent transfusions. The transfusions required were usually connected with other significant medical events. For instance, Plaintiff received a transfusion in 2004 because of the profuse bleeding associated with a broken tooth. *Id.* at 343-347. The transfusion in 2007 occurred when Plaintiff delivered a child, and the transfusion in 2008 was triggered by alcohol consumption and menorrhagia. *Id.* at 471, 464-65. Therefore, the record demonstrates that Plaintiff's chronic anemia, while severe, does not affect her on a daily basis or impose any functional limitations on her ability to work.

Finally, the record supports the conclusion that Plaintiff's adjustment disorder is not

10
Case No.: 10-CV-05061-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

sufficiently severe to affect her residual functional work capacity. Pursuant to a complete psychiatric evaluation in December 2006, Dr. El-Sokkary found that Plaintiff was capable of daily activities such as light cooking and cleaning and would have the ability to understand, remember, and perform simple tasks. *Id.* at 351-52. Though a state agency consultant concluded that Plaintiff would have mild limitations in activities of daily living, social functioning, and concentration, persistence, and pace, the consultant also concluded that Plaintiff could perform simple and repetitive tasks on a sustained basis, adapt to work changes, and relate to others. *Id.* at 362-72, 373-375.

Furthermore, during a psychological examination in September 2009, Plaintiff denied any psychological symptoms, reporting only her chronic nerve damage and epilepsy. *Id.* at 516. The psychologist concluded that Plaintiff was capable of understanding, remembering, and carrying out simple instructions, but might have moderate difficulty with complex tasks. *Id.* at 519. Thus, the substantial evidence supports the conclusion that Plaintiff's adjustment disorder does not inhibit her capacity to perform light work.

In sum, neither the intensity nor persistence of any of Plaintiff's medical impairments functionally limited her ability to perform light work. Accordingly, there is substantial evidence to support the ALJ's conclusion that Plaintiff had a RFC to perform light work. The Court therefore upholds this conclusion.

## C. Evidence Supporting Plaintiff's Ability to Perform Alternate Occupations

Substantial evidence in the record also supports the ALJ's conclusion at step five that, considering the Plaintiff's age, education, work experience, and RFC, there exist a significant number of jobs in the national economy that Plaintiff can perform. The burden of demonstrating that a claimant can perform alternate occupations can be met by asking the VE a hypothetical question that reflects all of the claimant's limitations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). When a VE considering all of the claimant's restrictions testifies that a claimant could perform specific jobs in significant numbers in the economy, the Commissioner has met his burden. *Id.*

To determine that Plaintiff was "not disabled" and able to perform alternate occupations, the ALJ followed the Medical Vocational Guidelines and relied on a vocational expert ("VE"), Ronald W. Morrell, to determine the extent to which Plaintiff's limitations eroded the unskilled light occupational base. In response to the ALJ's inquiry about what jobs an individual with Plaintiff's RFC and only occasional[2] use of the non-dominant arm could perform, the VE suggested the positions of an usher, lobby attendant, ticket taker, or cashier. *Id.* at 37-38, 62-63. The VE explained that working as an usher requires unskilled light work and that there are approximately 16,000 individuals employed in that occupation. *Id.* He further noted that given Plaintiff's only occasional use of the non-dominant upper extremity, the VE would erode the occupational base of 360,000 by two-thirds or three-quarters, leaving 90,000 potential cashier positions. *Id.* at 38, 63. Consequently, by relying on the VE's testimony, ALJ Rogozen's decision is supported by substantial evidence, and this Court upholds his conclusion.

**D. Allegation of Departure from the *Dictionary of Occupational Titles***

Plaintiff argues that the VE's testimony is inconsistent with the information contained in the *Dictionary of Occupational Titles* ("DOT") and that the ALJ failed to address his departure from the DOT. Plaintiff consequently argues that this constitutes reversible error. The Court has reviewed the record as a whole, particularly the VE testimony, and disagrees with Plaintiff's ultimate conclusion.

The DOT is an authoritative but not binding source for vocational reference. 20 C.F.R. § 404.1566(d)(1). Social Security Ruling 00-4p requires that: (1) the ALJ inquire about the DOT, (2) the VE provide a reasonable explanation and (3) the ALJ address any conflict between the VE testimony and the DOT in his written decision. SSR 00-4p. Where the failure to question and address any deviation from the DOT is harmless error, however, SSR 00-4p does not require a remand. *Massachi v. Astrue*, 486 F.3d 1149, 1154 n.19 (9th Cir. 2007); *see also Burch*, 400 F.3d at 679; *Cole v. Astrue*, 395 Fed. App'x. 387, 2010 WL 3516635, **1, **3 (9th Cir. Sept. 7, 2010).

---

[2] "'Occasionally' means occurring from very little up to one-third of the time." Social Security Ruling 83-10.

12

Case No.: 10-CV-05061-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff has the burden to establish that the error was harmful. *Shinseki v. Sanders,* 556 U.S. 396, 1706 (2011).

When the ALJ asked the VE what jobs an individual with Plaintiff's RFC and only occasional use of her non-dominant arm could perform, the VE proposed two occupations: an usher or ticket taker (D.O.T. 334.667-010) and Cashier II (D.O.T. 22.462-010). *Id.* at 37-38, 62-63. Plaintiff asserts that this testimony is inconsistent with the DOT, which describes both positions as requiring *frequent* "reaching" and "handling." Pl.'s Mot. at 13. Plaintiff further alleges that this constitutes reversible error because the ALJ failed to address this departure from the DOT in writing. *Id.* at 13-14. Plaintiff overstates this inconsistency and fails to consider that the VE specifically noted that Plaintiff's limitation to *occasional* use of her non-dominant upper extremity would erode up to three quarter of the available occupation base.

It is well established that VEs do not simply discuss general occupational categories found in the DOT, but rather, assess whether particular applicants for disability benefits are able to perform subcategories of jobs within the DOT. *Barker v. Sec'y of HHS*, 882 F.2d 1474, 1478 n.1 (9th Cir. 1989). The VE testified that Plaintiff's restrictions, namely the only occasional use of her non-dominant arm, would still permit her to perform 90,000 of the 360,000 available cashier positions. Tr. at 38, 63. The VE therefore considered Plaintiff's particular limitations and did not conflict directly with the DOT.

Even if this Court found that the VE testimony constituted a departure from the DOT, it would not reverse the ALJ's decision because any error would be rendered harmless. The VE eliminated positions in the cashier and usher job base that would require more than occasional use of Plaintiff's non-dominant upper extremity. *Id.* at 38, 63. As in the Ninth Circuit's decision in *Cole*, the Plaintiff here did not demonstrate how the inconsistency affected the occupations cited by the VE. *See* 395 Fed. App'x. at 387. Furthermore, the VE demonstrated that 90,000 jobs were available for Plaintiff to perform. Therefore, the ALJ's failure to identify and resolve any inconsistency is harmless error.

13
Case No.: 10-CV-05061-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## V. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment, and GRANTS Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: March 28, 2012         
                              EDWARD J. DAVILA
                              United States District Judge

14
Case No.: 10-CV-05061-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT